**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **JUDITH HALPERN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TDC 14-2538** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**************

**REPORT AND RECOMMENDATION**

Plaintiff *pro se* Judith Halpern seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's letter motion, which the undersigned construes as a motion for summary judgment or for remand under the fourth sentence of 42 U.S.C. § 405(g)[1] (ECF No. 18), and Defendant's Motion for Summary Judgment (ECF No. 22).[2] Plaintiff also seeks remand under the sixth sentence of 42 U.S.C. § 405(g) for the Commissioner to consider additional

[1] The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

evidence. ECF Nos. 18, 19, 27. Defendant contends that the administrative record contains substantial evidence to support the Commissioner's decision that Plaintiff is not disabled. Under Standing Order 2014-01, this matter has been referred to the undersigned for pretrial management and for proposed findings of fact and recommendations under 28 U.S.C. § 636(b)(1)(B) and L.R. 301(5)(b)(ix). No hearing is necessary. L.R. 105(6). For the reasons that follow, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, Plaintiff's motion for summary judgment or for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 18) be **DENIED**, Plaintiff's motion for remand under the sixth sentence of 42 U.S.C. § 405(g) (ECF Nos. 18, 19, 27) be **DENIED**, and Defendant's final decision be **AFFIRMED**.

## I

## Background

Plaintiff was born in 1972, has a college education, and previously worked as an HMS host, Montgomery College worker, office manager, and Target retail associate. R. at 30, 205. Plaintiff applied protectively for DIB and SSI on February 4, 2011, alleging disability beginning on August 24, 2009, due to dysmenorrhea, endometriosis, anxiety, depression, a learning disability, a colon polyp, and a fibroid. R. at 176-78, 201, 204. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 116-32. On September 24, 2012, ALJ Larry Banks held a hearing in Washington, D.C., at which Plaintiff *pro se* and a vocational expert ("VE") testified. R. at 70-115. At the hearing, Plaintiff amended her alleged onset date of disability to June 1, 2011. R. at 87, 199-200. Upon Plaintiff's request (R. at 261-66), a supplemental hearing was held on April 5, 2013, where Plaintiff *pro se* and the VE again

testified (R. at 36-69). On April 22, 2013, the ALJ issued a decision finding Plaintiff not disabled from the amended onset date of disability of June 1, 2011, through the date of the decision. R. at 19-35. Plaintiff sought review of this decision by the Appeals Council, contending that the ALJ discriminated against her on the basis of her gender and religious beliefs. R. at 18. The Appeals Council denied Plaintiff's request for review on March 21, 2014. R. at 8-15. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 11, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. ECF No. 1. On January 15, 2015, Defendant filed the administrative transcript of this case. ECF No. 11. On May 11, 2015, Plaintiff filed a letter construed as a motion for summary judgment and alternative motion for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 18), which she supplemented on June 1, 2015 (ECF No. 19). She also sought remand under the sixth sentence of § 405(g) for the Commissioner to consider additional evidence. ECF Nos. 18, 19, 27. On June 16, 2015, Defendant filed her Motion for Summary Judgment. ECF No. 22. On June 22, 2015, the case was referred to the undersigned for a report and recommendation for the disposition of the parties' motions. ECF No. 25. On June 29, 2015, Plaintiff filed her response to Defendant's Motion for Summary Judgment. ECF No. 27. The matter is now fully submitted.

## II

## Summary of Evidence

On May 12, 2009, Bradford Kleinman, M.D., noted that Plaintiff was "currently being treated for significant [dysmenorrhea] and endometriosis," and the doctor opined that "[d]ue to

her conditions she may require a few days off each month during her cycle for treatment." R. at 484.

On April 27, 2011, a state agency consultant, L. Robbins, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 373-81. Dr. Robbins opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper extremities. R. at 374. Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. R. at 375-77.

On August 18, 2011, another state agency medical consultant, Fulvio Franyutti, M.D., also assessed Plaintiff's physical RFC. R. at 430-38. Dr. Franyutti opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper extremities. R. at 431. Plaintiff occasionally could climb and crawl and frequently could balance, stoop, kneel, and crouch. R. at 432. Although she had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to hazards and extreme cold and heat. R. at 433-34.

The VE testified at the September 2012 hearing that a hypothetical individual with Plaintiff's age, education, and work experience could not perform Plaintiff's past work if the individual had the RFC to perform light work[3] but (1) could not stand any longer than fifteen to

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "If someone can do light work, [the Commissioner determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

twenty minutes and could not sit any longer than twenty to thirty minutes before alternating positions; (2) could not lift over fifteen pounds and push or pull over twenty-five pounds; (3) needed to avoid working around dangerous machinery or unprotected heights; (4) needed to avoid temperature extremes; and (5) was limited to performing unskilled[4] tasks with simple instructions because of issues with focus and concentration. R. at 105-06. Relying in part on the *Dictionary of Occupational Titles*[5] ("DOT"), the VE testified that the individual could perform the light, unskilled jobs of machine tender (DOT 775.685-010), grading and sorting worker (DOT 649.687-010), or packer and packaging worker (DOT 222.687-022), however. R. at 107-08. Such an individual with this RFC but instead limited to performing sedentary work[6] could perform the sedentary, unskilled jobs of security worker,[7] quality-control worker (DOT 737.687-026), or small-parts inserter (DOT 734.687-034). R. at 108-09. According to the VE, his

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, __ F.3d __, No. 14-2255, 2015 WL 9204335, at *1 n.1 (4th Cir. Dec. 17, 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[7] The occupational code number for security worker listed in the transcript (R. at 108) appears to be a typographical error, as the occupational title code for "surveillance-system monitor" appears in the DOT as 379.367-010. *See* DOT 379.367-010, 1991 WL 673244.

testimony was consistent with the DOT, with the exception of his testimony regarding the sit/stand option, which was based on his experience as a VE. R. at 109-10.

The VE testified at the April 2013 hearing that a hypothetical individual with Plaintiff's age, education, and work experience could not perform Plaintiff's past work if the individual's RFC involved a twenty- to thirty-minute sit/stand option; no climbing of ropes, ladders, or scaffolds; only occasional stooping; avoiding concentrated exposure to extreme temperatures and exposure to dangerous machinery and unprotected heights; no above-the-shoulder lifting or constant reaching with the upper extremities; and only work involving simple instructions and no complex tasks. R. at 64-65. The individual could perform, however, the light, unskilled jobs of grading and sorting worker (DOT 649.687-010), inspector (DOT 741.687-010), or information clerk (DOT 237.367-010). R. at 66. The individual also could perform the sedentary jobs of security worker (DOT 379.367-010), quality-control worker (DOT 737.687-026), or finish machine tender (DOT 681.685-030). R. at 66-68. A person who would be "off task" 20% of the workday because of pain and side effects of medication could perform no work, however. R. at 68.

## III

## Summary of ALJ's Decision

On April 22, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of June 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

perform other work in the national economy. R. at 25-31. The ALJ thus found that she was not disabled from the amended alleged onset date of disability of June 1, 2011, through the date of the decision. R. at 31.

**IV**

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[8]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[8] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

As discussed below, it is recommended that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's motions for summary judgment and for remand under the fourth and sixth sentences of 42 U.S.C. § 405(g).

**A. Plaintiff's Motion for Summary Judgment or for Sentence Four Remand**

**1. ALJ's Step Three Determination**

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986).

Here, at step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, including Listing 1.02(B) (R. at 26). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(B). Listing 1.02(B) provides:

> *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> . . . .

> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(B).

> Inability to perform fine and gross movements effectively means an extreme loss of function of *both* upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.* § 1.00(B)(2)(c) (emphasis added).

The ALJ found neither evidence of any medical sources opining that this listing was equaled nor objective evidence of any diagnoses or problems related to Plaintiff's left upper extremity. R. at 26. With regard to Plaintiff's right upper extremity, the ALJ found that the evidence

> does not substantiate a disabling 2006 right arm fracture. There is no evidence of any treatment for this during the relevant period. There is no evidence of any recommendations for treatment for this during the relevant period. [Plaintiff's] pain management records, which contain detailed physical examinations, are not noteworthy for any deficits related to the right arm. They consistently note normal range of motion, no neurological deficits, and denials of bone or joint symptoms, as well as denying muscle weakness [R. at 382-423]. [Plaintiff's] testimony was not noteworthy for any specific treatment for this since 2006. [Plaintiff] twice testified to having lifting restrictions of fifteen pounds, an accommodation she was granted back in 2006 and that is still current. In her function report, she specifically listed her lifting restrictions as "no more than 10 pounds" [R. at 220-29].

R. at 27. Substantial evidence thus supports the ALJ's finding at step three that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 1.02(B).

**2. ALJ's RFC Assessment and Step Four Determination**

Before considering step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] requires a sit/stand option after thirty minutes; no climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to temperature extremes; no work around dangerous moving machinery or unprotected heights; no above the shoulder lifting or constant reaching in other directions with the upper extremities; due to pain and medication side effects she is limited to simple instructions and no complex tasks; she may be off task up to 5% of the workday; and her work environment should be in close proximity to a restroom.

R. at 26. In light of this RFC assessment, the ALJ determined at step four that Plaintiff could not perform her past relevant work. R. at 30.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 27. "[I]nconsistencies throughout the record and a lack of corroboration in her medical records for numerous allegations and symptoms does [sic] not bolster her credibility when considering her statements of the intensity, persistence and limiting effects of her alleged symptoms." R. at 27.

The Fourth Circuit recently reiterated the following standard in evaluating a claimant's complaints of pain or other symptoms. *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015). Whether "a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 272 (quoting *Craig*, 76 F.3d at 594). "At this stage of the inquiry, the pain claimed is not directly at issue; the

focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling[9] ("SSR") 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

[9] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

*Stitely v. Colvin*, 621 F. App'x 148, 150 (4th Cir. 2015) (per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Plaintiff does not dispute the ALJ's credibility finding in this case, but, in any event, the ALJ explained at length his finding that the evidence did not substantiate a disabling 2006 right-arm repaired fracture or disabling bleeding, pain, gynecological impairments, edema, or low potassium. R. at 27-29. The ALJ found, among other things, no evidence of such treatment or recommendations for such treatment (R. at 27), normal physical findings (R. at 27), lack of corroboration by objective medical evidence of Plaintiff's complaints (R. at 28), no evidence of treatment or refusal of treatment by a gynecologist in the last few years (R. at 28), and inconsistent statements by Plaintiff in her testimony and function reports (R. at 28). "The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 392 (D. Md. 2000) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring); *see Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (per curiam) (claimant's failure, *inter alia*, to sustain consistent treatment regimen supported ALJ's credibility determination that claimant's pain complaints were inconsistent with evidence).

The ALJ also noted that Plaintiff "testified to memory and concentration problems due to pain," but the ALJ "found her able to answer questions clearly and coherently, without any delays or obvious problems. She specifically indicated that she took her pain medications earlier." R. at 28. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Further, an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles*, 29 F.3d at 921; *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Here, the ALJ found that Plaintiff's

> activities of daily living do not substantiate disabling impairments. The undersigned has considered the alleged limitations in [Plaintiff's] function reports, including having difficulties with personal care, housework, shopping, and other activities, often requiring significant help and breaks [R. at 212-29]. However, both of these function reports were dated in April 2011, during a period that [Plaintiff] testified she believed herself able to work. This does not lend credibility to how limited [Plaintiff] indicated she was in these forms. Nor do the numerous other inconsistencies already noted. The undersigned does not find [Plaintiff] fully credible regarding her alleged limitations in her daily activities.

R. at 29. Substantial evidence thus supports the ALJ's finding that Plaintiff's activities belied her allegations regarding the functional limitations of her impairments. *See* SSR 96-7p, 1996 WL 374186, at *5 (ALJ must consider factors such as consistency of claimant's statements with other information in record, including consistency of claimant's own statements). In short, substantial evidence supports the determination of Plaintiff's credibility by the ALJ, who in this case applied the correct legal standards.

The ALJ also considered the opinion evidence in this case and gave little weight to the opinions of the state agency psychological consultants and Dr. Kleinman. R. at 29. A treating

source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Dunn*, 607 F. App'x at 267. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

Plaintiff has not disputed the weight given by the ALJ to Dr. Kleinman's opinion, which the ALJ found to be "vague and remote" and not well supported by Plaintiff's lack of hysterectomy and lack of treatment by a gynecologist. R. at 29. In any event, in affording little weight to Dr. Kleinman's opinion, the ALJ considered the length of the treatment relationship and the frequency of examination, the supportability of the doctor's opinion, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because "[t]he ALJ need not accept the opinion of any physician, including a treating physician,

if that opinion is brief, conclusory, and inadequately supported by clinical findings," substantial evidence supports the weight afforded by the ALJ to Dr. Kleinman's opinion. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**3. ALJ's Step Five Determination**

After determining at step four that Plaintiff was unable to perform her past relevant work, the ALJ determined whether jobs exist in significant numbers in the national economy that Plaintiff could perform. R. at 30. The ALJ determined that, under SSR 00-4p, the VE's testimony was consistent with the information contained in the DOT, although the testimony regarding the sit/stand option was based on the VE's experience. R. at 31. The ALJ found that, on the basis of the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. R. at 31.

As noted in Part IV above, the Commissioner bears the burden at the final step of the five-step sequential evaluation process used to evaluate a claimant's disability claim. *Pearson*, 2015 WL 9204335, at *3. To determine whether sufficient other work exists for the claimant in the national economy, the ALJ relies primarily on the DOT. *Id.* The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* SSR 00-4p requires that the ALJ inquire, on the record, whether the VE's testimony conflicts with the DOT, and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT. *Id.* (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). The ALJ must, by determining if the VE's explanation is

reasonable, resolve conflicts before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled. *Id.* (citing same).

An ALJ has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if his testimony is consistent with the DOT. *Id.* at *4. Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT. *Id.* "[I]n many cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." *Id.* at *5. A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* (citing SSR 00-4p, 2000 WL 1898704, at *2).

Here, at the April 2013 hearing the ALJ asked the VE to consider an individual with Plaintiff's same age, education, and work experience who would be limited, *inter alia*, to "no above-shoulder lifting or above-shoulder constant reaching with the upper extremities." R. at 65. The VE testified that, despite these impairments, such an individual could perform the light and sedentary jobs of grading and sorting worker, inspector, information clerk, security worker, quality-control worker, and finish machine tender. R. at 66-68. The ALJ found in his decision that Plaintiff had an RFC requiring, among other things, "no above the shoulder lifting or constant reaching in other directions with the upper extremities." R. at 26. The ALJ found that, according to the VE's testimony, in light of this RFC assessment, Plaintiff could perform unskilled, light occupations such as a grader/sorter, inspector, or information clerk. R. at 31. The ALJ found that the VE's testimony was consistent with the information contained in the DOT, with the exception of the sit/stand option. R. at 31.

Substantial evidence supports the ALJ's finding at step five that Plaintiff could perform other work in the national economy. "In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments." *Brinkley v. Astrue*, 695 F. Supp. 2d 269, 282 (D.S.C. 2010) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). According to the DOT, the jobs of information clerk and security worker require a reasoning level of three. DOT 237.367-010, 1991 WL 672185 (listed as "appointment clerk"); DOT 379.367-010, 1991 WL 673244 (listed as "surveillance-system monitor"). Level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." DOT app. C, 1991 WL 688702. The ALJ's assessment of Plaintiff's RFC, however, limited her to "simple instructions and no complex tasks" (R. at 26), a limitation that apparently conflicts with the demands of level-three reasoning. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (determining that limitation to simple, routine work tasks "seems inconsistent with the demands of level-three reasoning"). *But see Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (per curiam) (determining that capacity to follow simple instructions was consistent with level-three reasoning); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (unskilled job of information clerk was not complex and thus was consistent with level-three reasoning); *Clarkson v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-631, 2013 WL 308954, at *2 (D. Md. Jan. 24, 2013). Because "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the ALJ "erred in failing to reconcile this apparent conflict." *Zavalin*, 778 F.3d at 847.

The ALJ's failure to reconcile this apparent conflict is harmless, however, as the VE identified other jobs consistent with Plaintiff's RFC. The ALJ's hypothetical questions to the VE at the April 2013 hearing involved "no above-shoulder lifting or above-shoulder constant reaching with the upper extremities" (R. at 65).[10] The jobs of grading and sorting worker (DOT 649.687-010), finish machine tender (DOT 681.685-030), and inspector (DOT 741.687-010) all involve *frequent* reaching[11] and reasoning levels below level three. DOT 649.687-010, 1991 WL 685669 (listed as "paper sorter and counter"); DOT 681.685-030, 1991 WL 678151 (listed as "carding-machine operator"); DOT 741.687-010, 1991 WL 680249 (listed as "paint-spray inspector"). These jobs are consistent with Plaintiff's RFC and exist in significant numbers in the national and local economies (R. at 31, 66, 68). *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number.").[12]

Moreover, the VE's identification of these jobs that require only frequent reaching does not apparently conflict with an RFC to perform no above-the-shoulder lifting. "[L]ifting and reaching are not the same." *Cadusale v. Astrue*, No. SACV 11-1837-JEM, 2012 WL 2373425, at *4 (C.D. Cal. June 21, 2012). "Reaching" is defined as "[e]xtending hand(s) and arm(s) in any

[10] When an "[a]ctivity or condition exists 2/3 or more of the time," its frequency occurs "constantly." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* app. C (1993 ed.).

[11] When an "[a]ctivity or condition exists from 1/3 to 2/3 of the time," its frequency occurs "frequently." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* app. C (1993 ed.).

[12] The job of quality-control worker (DOT 737.687-026), which requires constant reaching, is not consistent with Plaintiff's RFC. *See* DOT 737.687-026, 1991 WL 680047 (listed as "check weigher"). The ALJ's error in failing to resolve this conflict between the DOT and the VE's testimony was harmless, however, in light of the VE's identification of other jobs that require only frequent reaching.

direction." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* app. C (1993 ed.). "Lifting," on the other hand, means "[r]aising or lowering an object from one level to another." *Id.* Thus, "reaching and lifting are distinct limitations as lifting is an exertional limitation while reaching is considered nonexertional." *Blair v. Astrue*, No. 3:11CV520-WC, 2012 WL 2974897, at *4 (M.D. Ala. July 20, 2012). Substantial evidence thus supports the ALJ's determination that jobs exist in significant numbers in the national economy to someone limited to performing simple tasks requiring no above-the-shoulder lifting and no constant reaching in the other directions. Thus, it is respectfully recommended that the Court grant summary judgment in favor of Defendant and affirm the Commissioner's final decision.

**B. Plaintiff's Motion for Sentence Six Remand**

Plaintiff also seeks remand under the sixth sentence of 42 U.S.C. § 405(g) for the Commissioner to consider additional evidence filed with the Court. ECF Nos. 18-1, 18-2, 19, 27-1. Defendant maintains that remand is not warranted because this evidence neither is material nor relates back to the relevant period between June 1, 2011, and April 22, 2013, the date of the ALJ's decision. Def.'s Mem. Supp. Mot. Summ J. 17, ECF No. 22-1.

The sixth sentence of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g). In other words, under the sixth sentence of § 405(g), "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S. Ct. 2157, 2163 (1991). A claimant seeking a remand under sentence six must satisfy four requirements. *Finney v. Colvin*, __ F. App'x __, No. 14-2141, 2016 WL 304107, at *4 (4th Cir. Jan. 26, 2016) (per curiam). "First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits and is not merely cumulative of evidence already on the record." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). Second, the claimant must establish that the evidence is material. *Id.* Evidence is material "if the court concludes that the [Commissioner's] decision might reasonably have been different had that evidence been before [her] when [her] decision was rendered." *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *see Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc) ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."). "Third, the claimant must show that good cause exists for her failure to present the evidence earlier." *Finney*, 2016 WL 304107, at *4 (citing *Borders*, 777 F.2d at 955). Fourth, the claimant must present to the Court at least a general showing of the nature of the new evidence. *Id.* (citing *King*, 599 F.2d at 599). "In assessing whether the claimant has made these requisite showings, however, '[t]his Court does not find facts or try the case de novo.'" *Id.* (alteration in original) (quoting *King*, 599 F.2d at 599).

The undersigned finds that the evidence submitted by Plaintiff to the Court is not material, as it would not have changed the administrative outcome. Plaintiff fails to demonstrate how the additional evidence of her genetic phenotype (ECF No. 19 at 3-4); dental records (ECF

No. 19 at 7); abnormal electrocardiograms in July 2012 and January 2015 (ECF Nos. 18-1, 18-2); billing records from her medical providers in 2006 (ECF No. 27-1 at 11-17); and an electrocardiogram on October 3, 2014, showing "mild pulmonary stenosis," "class II diastolic dysfunction," "mild to moderate concentric left ventricular hypertrophy," and "left atrial enlargement" (ECF No. 19 at 8) would have altered the ALJ's assessment of her RFC. Remand under the sixth sentence of 42 U.S.C. § 405(g) thus is not warranted.

**C. ALJ's Duty to Develop the Record**

Plaintiff also contends that the ALJ failed to obtain "independent psychiatric evaluations and physical evaluations." ECF No. 19 at 2. Although ALJs have a duty to assume a more active role in helping claimants develop the record, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994); *see Lehman v. Astrue*, 931 F. Supp. 2d 682, 693 (D. Md. 2013). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). However, although an ALJ has a duty to develop adequately the record on all relevant facts and issues before making a final decision, *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the standard for ordering consultative examinations is when "the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim" or when there is an inconsistency in the evidence. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). In other words, the need for a consultative examination arises if, for example, "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources"; "[t]he evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for

reasons beyond [the claimant's] control, such as death or noncooperation of a medical source"; "[h]ighly technical or specialized medical evidence that [the Commissioner needs] is not available from [the claimant's] treating or other medical sources"; or "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work," "but the current severity of [the claimant's] impairment is not established." *Id.* §§ 404.1519a(b)(1)-(4), 416.919a(b)(1)-(4).

The ALJ noted:

> The undersigned considered depression, anxiety, and a learning disability. [Plaintiff] alleged these conditions [R. at 203-11]. She did not testify to having any of these impairments. Her medical records are not noteworthy for any diagnoses or treatment for depression or anxiety [R. at 251-58, 297-98, 352-66, 382-423, 440-59, 464-82]. Moreover, some of the [Plaintiff's] records note her consistently denying symptoms of depression and anxiety at every visit [R at 382-423]. No school records were submitted to corroborate a learning disability. The undersigned finds no acceptable support for any of these diagnoses to consider. Furthermore, the below [RFC] accommodates these alleged limitations, particularly a learning disability, with work at the unskilled level.
>
> . . . .
>
> The undersigned considered an abnormal EKG and a heart murmur. [Plaintiff] mentioned these impairments, although she did not explain how they limit her. Her records note reports of a questionable heart murmur as a child and a current EKG that is abnormal, with [Plaintiff] indicating being unable to follow up with a cardiologist as recommended. However, her records also note that this is an asymptomatic condition [R. at 448-49, 472-82]. Therefore, they are nonsevere.

R. at 25. Because Plaintiff does not point to any inconsistency or insufficiency of the evidence, a consultative examination was not warranted in this case. *See Smith v. Sullivan*, No. 89-1730, 1990 WL 12684, at *2 (4th Cir. Feb. 6, 1990) (per curiam) ("Additionally, we find that the ALJ had no duty to further develop the record regarding claimant's alleged 'nervous breakdown' since none of claimant's examining physicians suggested that he suffered from any mental or emotional impairment. For the foregoing reasons, the district court properly found that any

alleged deficiencies in the development of the record were not prejudicial to the claimant and did not prevent him from receiving a fair hearing.”). Rather, the ALJ

> did not discount [Plaintiff’s] limitations, as it found that she did in fact have severe impairments that prevented her from performing her past relevant work. . . . [The Court notes] that the task of determining a claimant’s [RFC] and ability to work is within the province of the ALJ, not of doctors. Moreover, [Plaintiff] has not shown that she suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there is no evidence [the] ALJ’s decision would have changed in light of any additional information. Consequently, the ALJ did not err by not requesting an additional consultative examination . . . .

*Robinson v. Astrue*, 365 F. App’x 993, 999 (11th Cir. 2010) (per curiam); *see Reid v. Comm’r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (“[The claimant] has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim.”). Thus, Plaintiff’s contention that the ALJ failed to develop the record by failing to order a consultative examination is unavailing.

In sum, for the reasons stated above, it is **RECOMMENDED** that Defendant’s Motion for Summary Judgment (ECF No. 22) be **GRANTED**, Plaintiff’s motion for summary judgment or for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 18) be **DENIED**, Plaintiff’s motion for remand under the sixth sentence of 42 U.S.C. § 405(g) (ECF Nos. 18, 19, 27) be **DENIED**, and Defendant’s final decision be **AFFIRMED**.

## VII

## Recommendation

For the reasons set forth above, it is respectfully recommended as follows:

(1) The Court **GRANT** Defendant’s Motion for Summary Judgment (ECF No. 22);

(2) The Court **DENY** Plaintiff’s motion for summary judgment or for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 18);

(3) The Court **DENY** Plaintiff's motion for remand under the sixth sentence of 42 U.S.C. § 405(g) (ECF Nos. 18, 19, 27);

(4) The Court **AFFIRM** Defendant's final decision; and

(5) The Court **CLOSE** this case.

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be served and filed within seventeen days of the date of this Report and Recommendation under Fed. R. Civ. P. 6(d), 72(b), and L.R. 301(5)(b). Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within seventeen days after the date of this Report and Recommendation may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Date: February 4, 2016

/s/
Thomas M. DiGirolamo
United States Magistrate Judge